**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Arizona School Risk Retention Trust, Inc.,

            Plaintiff,

    vs.

NMTC, Inc. d/b/a Matco Tools, et al.,

            Defendants.

No. CV-14-08009-PCT-PGR

ORDER

      Among the motions pending before the Court is Techway Industrial Company Limited's Motion to Dismiss the Plaintiff's Complaint Under Fed.R.Civ.P. 12(b)(2) and 12(b)(5) (Doc. 123).  Having considered the parties' memoranda in light of the relevant record, the Court finds that defendant Techway Industrial Company Limited ("Techway") should be dismissed from this action pursuant to Fed.R.Civ.P. 12(b)(2) because the Court lacks personal jurisdiction over it.[1]

---

[1]       No party has asked for a hearing on Techway's motion and the Court concludes that oral argument would not aid the decisional process.

      Because the Court concludes that it has no personal jurisdiction over Techway, it does not reach the issue raised in the Rule 12(b)(5) portion of Techway's motion as to whether the plaintiff has properly served Techway. For that reason, the plaintiff's two pending motions related to additional service on Techway are moot.

Background

This action arose from a fire that destroyed a transportation building belonging to the Round Valley Unified School District No. 5 in Eager, Arizona on May 12, 2013. The school district is a participating member of plaintiff Arizona School Risk Retention Trust, Inc. ("plaintiff') and its membership agreement with the plaintiff provides the plaintiff with a right of subrogation.  The plaintiff's contention is that the fire originated in an allegedly defective lithium-ion battery in a rechargeable drill that the plaintiff asserts was manufactured and/or supplied by Techway; the drill at issue was one from co-defendant Matco Tools ("Matco") that Matco alleges it purchased from co-defendant Professional Tool Products L.L.C. ("PTP").  According to the plaintiff, the drill was manufactured by Techway with a battery purchased from proposed new defendant Samsung SDI Co., Ltd.  The First Amended Complaint (Doc. 48) alleges claims of negligence (Count I), strict liability/products liability (Count II), and breach of implied warranties of merchantability and fitness for a particular purpose (Count III) against Techway, as well as against the other named defendants without distinguishing among them.

Personal Jurisdiction-Related Evidence

It is undisputed that Techway is incorporated in Taiwan and has its principal place of business in Taiwan.  In support of its contention that the Court lacks personal jurisdiction over it, Techway has submitted the affidavit of Chung, Fu-Hsiang, Techway's president.[2]  The affidavit sets forth the following: (1) that Techway is in the business of designing and manufacturing battery packs and chargers, among other things; (2) that Techway does not sell or ship any products

[2]

The Court notes that in resolving the Rule 12(b)(2) motion it has not relied on the evidence Techway submitted with its reply.

to Arizona; (3) that Techway has no distributors in Arizona; (4) that Techway has no knowledge that its products will be shipped to or sold in Arizona; (5) that Techway is not licensed, authorized, or registered to do any business in the United States, including Arizona; (6) that Techway has never executed a contract in Arizona; (7) that Techway has never provided any services in Arizona nor has it ever provided any services to any person in Arizona; (8) that Techway has never paid taxes in Arizona; (9) that Techway has never owned, rented or leased any real or personal property in Arizona; (10) that Techway has never maintained any place of business in Arizona, and it has never maintained a telephone number, telex or telefax number, or address in Arizona; (11) that Techway has no assets in Arizona; (12) that Techway has never had an agent for service of process in Arizona; (13) that Techway has never had any employees, including sales persons, representatives, agents or servants, conduct business in Arizona; (14) that Techway has no employees who attend trade shows or conduct meetings in Arizona; and (15) that Techway has never been a party to another lawsuit in Arizona.

In support of its opposition to the Rule 12(b)(2) motion, the plaintiff has submitted an affidavit from Marty Huguet, the president of co-defendant PTP, which is located in South Carolina.  The Huguet affidavit states: (1) that PTP purchased the battery-powered drill, battery charger and battery pack at issue from Techway, and PTP then sold the drill to co-defendant Matco for Matco to sell through its nationwide distributor base, which includes distributors in Arizona; (2) that in 2008-2009, PTP entered into a Supplier Agreement with Techway for Techway to supply drills to PTP at PTP's South Carolina facility that would be developed in a Matco-style housing and brand which PTP would then sell to Matco for Matco to distribute nationally, that there was an understanding that this item would be exclusive to

PTP/Matco in the United States market in that housing and style, that under this agreement, Techway supplied its designed and manufactured products that Techway knew at the time of the agreement would be distributed to all Matco distributors throughout the United States, including Arizona, and that with this assurance, Techway agreed to the exclusivity provision[3]; (3) that Matco utilizes a different marketing and distribution model than other competitors in that Matco tools may only be purchased from an authorized vendor located within a specific coverage area, and there are such authorized vendors in Arizona; (4) that during the product development process, Techway provided copies of quality and certification and testing by its own and standardized laboratory facilities, including but not limited to UL listing; (5) that as a further condition of the Supplier Agreement, PTP required Techway to acquire insurance covering any claims in the United States that might arise out of its merchandise, including the drills, that Techway provided PTP with a certificate of insurance for coverage in the United States, which included insurance coverage for Arizona, and that based on this assurance, PTP purchased merchandise, including the drill, and that PTP has bought many thousands of Techway products for distribution throughout the United States, including Arizona; and (6) that PTP and Matco agree on the warranty statement and PTP provides to Techway the artwork for the warranty statement to be printed by Techway on every product instruction manual, and PTP provides related warranty information to

---

[3]

      At the end of Paragraph 7 of Huguet's affidavit is a reference to an "Exhibit A para 3[,]" which the Court assumes is meant to refer to a supporting exhibit, but the plaintiff's submitted evidence does not include any document labeled "Exhibit A" and no item of submitted evidence other than Huguet's affidavit contains any information about the referenced Supplier Agreement between Techway and PTP.  A copy of the Supplier Agreement is not part of the record.

- 4 -

Techway on an annual basis, and this includes information concerning warranty information related to products in Arizona.[4]

The plaintiff has also submitted as evidence supporting its jurisdiction-related argument (1) copies of six exemplar United States patents issued to Techway, none of which has anything to do with the allegedly defective rechargeable drill at issue here[5], and (2) a copy of a certificate for products liability insurance, dated October 7, 2014, issued to Techway by Fubon Insurance, another Taiwanese company, for worldwide coverage, including the United States and Canada, for the cordless power tools and battery pack/battery chargers Techway distributes, but with a policy period of July 01, 2014 to July 01, 2015, which does not include the date the fire at issue here occurred, which was on May 12, 2013.

Discussion

Techway has moved to dismiss this action as to it pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction; it argues that the Court has neither general nor specific personal jurisdiction over it.   Since the plaintiff only argues in its

_____

[4]

Techway objects to portions of Huguet's affidavit pursuant to Fed.R.Evid. 602 based on Huguet's failure to set forth his personal knowledge about such matters in his affidavit as Techway's design and manufacturing process, Techway's knowledge of PTP's distribution plans, or Techway's reasons for entering into an agreement with PTP.  While the Court shares Techway's admissibility concerns about some of Huguet's statements, the Court concludes that it need not resolve the evidentiary issues because the plaintiff has not established the existence of personal jurisdiction even if the entirety of Huguet's affidavit is considered to be admissible evidence.

[5]

The submitted patents are for a derailleur cable detecting assembly for an electric-auxiliary bicycle, an electric caulking gun (issued after the event at issue here), an electric grinding gun, a lubricant gun, a motor-driving device of an electric caulking gun (issued after the event at issue here), and a rechargeable motor-driven ratchet wrench having power-off protection.

response that specific jurisdiction exists here, the Court will resolve Techway's Rule 12(b)(2) motion only on that ground.

The burden of proof is on the plaintiff to show that specific personal jurisdiction is appropriate over Techway, and it needs to make that showing as to each claim asserted against Techway. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir.2015). Since the Court is only considering the parties' pleadings and their submitted written materials without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to defeat the motion to dismiss, Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir.2014), i.e., it need only demonstrate admissible facts that if true would support jurisdiction over Techway. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir.1995). Only contacts occurring prior to the event causing the litigation, i.e., the May 12, 2013 fire, may be considered by the Court. Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co., 907 F.2d 911, 913 (9th Cir.1990).

Where, as here, there is no applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which it sits. Martinez, at 1066. Arizona's long-arm statute provides that an Arizona court may exercise personal jurisdiction over a nonresident defendant to the maximum extent permitted under the Due Process Clause of the United States Constitution. Ariz.R.Civ.P. 4.2(a); A. Uberti and C. v. Leonardo, 892 P.2d 1354, 1358 (Ariz.1995). The Constitution permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The "'minimum contacts' inquiry principally protects the liberty of the

nonresident defendant, not the interests of the plaintiff." Walden v. Fiore,134 S.Ct. 1115, 1125 n.9 (2014).

Since the issue here is specific jurisdiction over a nonresident of Arizona, the inquiry turns on whether the suit-related conduct that Techway itself created constituted a substantial connection with Arizona at the time of the fire. Id., at 1121-22.  This inquiry is resolved through a three-prong test: (1) Techway must have purposefully directed its activities or consummated some transaction with Arizona or an Arizona resident, or performed some act by which it purposefully availed itself of the privilege of conducting activities in Arizona, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to Techway's Arizona-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. Picot v. Weston, 780 F.3d at 1211. All three factors must exist for personal jurisdiction to apply. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir.1995). The burden of proving that the exercise of jurisdiction would not be reasonable shifts to Techway only if the plaintiff first meets its burden of proving the first two prongs. Picot, at 1212.  Since the Court concludes that the plaintiff has failed to meet its burden with respect to the first prong of the specific personal jurisdiction test, the Court need not, and does not, reach the issues involved with whether the second and third prongs have been met.

The first prong of the test, and the deciding prong here, is analyzed under either a purposeful availment standard or a purposeful direction standard, which are two distinct concepts. Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672 (9th Cir. 2012).  Since the plaintiff's claims against Techway are breach of contract and nonintentional tort-related ones, the Court will utilize the purposeful

availment standard. *See* Holland America Line Inc. v. Wärtsilä North America, Inc., 485 F.3d 450, 460 (9th Cir.2007) ("[I]t is well established that the *Calder* [purposeful direction] test applies only to intentional torts, not to the breach of contract and negligence claims[.]"); *see also*, Marvix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1228 (9th Cir.2011) (noting that the Supreme Court's plurality in J. McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780 (2011), used a purposeful availment test to determine whether specific personal jurisdiction existed in a product liability case.)

The purposeful availment standard focuses on whether a nonresident defendant's conduct and connection with the forum are such that it should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). It is based on the presumption that it is reasonable to require a defendant to be subject to the burden of litigating in a state in which it conducts business and benefits from its activities in that state. Brainerd v. Governors of the University of Alberta, 873 F.2d 1257, 1259 (9th Cir.1989). This requirement is met if the contacts proximately result from actions by the defendant itself that create a substantial connection with the forum, such as where the defendant has deliberately engaged in significant activities within the forum or has created continuing obligations between itself and forum residents. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). But the defendant may not be haled into a jurisdiction as a result of the defendant's random, fortuitous, or attenuated contacts with the forum, or on the unilateral activity of another party or a third person. *Id.* at 475.

Underlying the plaintiff's specific jurisdiction argument in this product liability action is a "stream of commerce" theory: "[I]f Techway designed and manufactured

power drills to be sold in the United States national market, knowingly availed itself of a national distribution system for its product that included Arizona, and supplied large numbers of products into that national distribution system that included Arizona, it should reasonably have been on notice that it was subject to jurisdiction in Arizona."  As the plaintiff notes, a majority of the Supreme Court has not agreed on a stream of commerce rationale for specific jurisdiction. *See* <u>Asahi Metal Industry Co. v. Superior Court of California, Solano County</u>, 480 U.S. 102 (1987) ("<u>Asahi</u>") and  <u>J. McIntyre Machinery, Ltd. v. Nicastro</u>,131 S.Ct. 2780 (2011) ("<u>J.McIntyre</u>").

<u>Asahi</u> arose from a motorcycle accident in California involving an allegedly defective motorcycle tire. Asahi Metal Industry Co., a Japanese company, manufactured the tire tube's valve assembly in Japan and then sold it in Taiwan to Cheng Shin Rubber Industrial Co., a Taiwanese company, which then  included the valve assembly in the tire tube it manufactured.  Chen Shin, after being sued in California as a result of the accident, filed a cross-complaint seeking indemnification from Asahi.  The California Supreme Court held that because the stream of commerce brought some valves that Asahi sold Cheng Shin into California, Asahi's awareness that its valves would be sold in California was sufficient to permit California to exercise personal jurisdiction over Asahi.  The Supreme Court reversed, unanimously concluding that no personal jurisdiction existed.  What the Supreme Court could not agree on was a majority rationale for the lack of jurisdiction.

Justice O'Connor, with the concurrence of three other justices, adopted what has become known as the "stream of commerce plus" test.  She concluded that:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.  Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing

the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.   But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

480 U.S. at 112.  Justice O'Connor further concluded that no personal jurisdiction existed even if Asahi was aware that some of the valves it sold to Cheng Shin would be incorporated into tire tubes sold in California because Asahi had not purposefully availed itself of the California market inasmuch as it did not do business in California, it had no office, agents, employees, or property in California, it did not advertise or otherwise solicit business in California, it did not create, control, or employ the distribution system that brought the valves to California, and there was no evidence that it designed its product in anticipation of sales in California. *Id.* at 112-13.

Justice Brennan, also with the concurrence of three other justices, while concurring in the judgment that no personal jurisdiction existed, did not agree with Justice O'Connor's stream of commerce theory.   Noting that the stream of commerce refers to the regular and anticipated flow of products from manufacture to distribution to retail sale, Justice Brennan concluded that no "additional conduct" by the nonresident defendant was necessary for jurisdiction to comport with due process because "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117.

Subsequent to Asahi, the Ninth Circuit adopted Justice O'Connor's "stream

of commerce plus" theory of specific jurisdiction. *See* Holland America Line Inc. v. Wärtsilä North America, Inc., 485 F.3d at 459 (Citing to Asahi, the court stated: "The placement of a product into the stream of commerce, without more, is not an act purposefully directed to a forum state. Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum.") (internal citation omitted).

J.McIntyre, the Supreme Court's most recent pronouncement on specific personal jurisdiction involving a product liability action, involved a New Jersey state litigation against the English manufacturer of an allegedly defective metal-shearing machine that injured the plaintiff in New Jersey.  A majority of the Supreme Court held that the English defendant was not subject to specific personal jurisdiction in New Jersey, although, as in Asahi, there was no majority rationale for the decision. The relevant facts in J.McIntyre were (1) the English defendant, which manufactured its machines in England, did not sell its machines to buyers in the United States other than to its independent United States distributor, but the defendant wanted its distributor to sell its machines in the United States to anyone willing to buy them, (2) the defendant's officials attended annual recycling trade shows in the United States, but not in New Jersey, (3) up to four of the defendant's machines ended up in New Jersey, (4) the defendant had no office in New Jersey, (5) the defendant did not own any property or pay any taxes in New Jersey, (6) the defendant did not advertise in New Jersey, (7) the defendant did not send any employees to New Jersey, (8) the defendant held some United States patents on its recycling technology, and (9) the defendant's independent United States distributor structured its advertising and sales efforts in accordance with the defendant's direction and guidance whenever

possible.  The New Jersey Supreme Court held that the defendant could be sued in New Jersey under a stream of commerce theory of jurisdiction, notwithstanding that the defendant did not have a single contact with New Jersey other than the fact that its machine in question ended up there, because the defendant knew or reasonably should have known that its products were distributed in the United States through a nationwide distribution system that might lead to its products being sold in any of the states, including New Jersey.

Justice Kennedy, in a plurality opinion in which three other justices concurred, adopted a more restrictive view of specific jurisdiction.  In so doing, he rejected the foreseeability-based stream of commerce theory adopted by Justice Brennan in his Asahi concurrence, reasoning that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." 131 S.Ct. at 2788. Justice Kennedy also concluded that the Supreme Court's "precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789.  He further concluded that while the facts of the case may reveal an intent to serve the United States market, they did not show that the defendant purposefully availed itself of the New Jersey market. *Id.* at 2790.

Justice Breyer, joined by one other justice, concurred that there was no specific personal jurisdiction in New Jersey based on the Supreme Court's precedents, which he noted had "held that a single sale to a customer who takes an accident-causing product to a different State (where the accident takes place) is not a sufficient basis for asserting jurisdiction[,]" *id.* at 2792, *i.e.*, that the Supreme Court has "rejected the notion that a defendant's amenability to suit travels with the

chattel." *Id.* at 2793 (internal quotation marks and brackets omitted).  Justice Breyer concluded that the facts found by the New Jersey Supreme Court neither showed a regular flow or regular course of sales in New Jersey nor did they show "something more" such as "special state-related design, advertising, advice, marketing, or anything else," or any specific effort by the defendant to sell in New Jersey. *Id.* at 2792.[6]

Since the Ninth Circuit has yet to apply J.McIntyre to a product liability action, the Court, as many other courts have done, views the holding of the fragmented J.McIntyre decision to be that of the narrow ground set forth in Justice Breyer's concurrence in the judgment. *See* Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented [Supreme] Court decides a case and no single rationale explaining the results enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]") (internal quotation marks omitted). It can be discerned from J.McIntyre, viewed from Justice Breyer's prospective, that a stream of commerce approach that dispenses with an examination and weighing of the nonresident defendant's contacts with the forum and that imposes personal jurisdiction on no more than the defendant's use of a national distributor which directs product of any quantity to the forum must be rejected.  Since this approach is consistent with the Ninth Circuit's approach in Holland, the Court therefore focuses

---

[6]

      Justice Ginsberg, joined by two other justices, filed a dissent wherein she concluded that specific jurisdiction was present because the allegedly defective machine did not randomly or fortuitously reach New Jersey, but was there as a result of the defendant's targeting of the United States as a single market through its deliberate engagement of a local distributor to sell its products everywhere in the United States the distributor could attract customers.

on Techway's efforts directed at Arizona that amount to something more than merely placing its product at issue in the stream of commerce.

The plaintiff points to various acts by Techway that it argues meets the purposeful availment factor, but the Court, viewing these acts as a whole, is not persuaded that they are sufficient to subject Techway to personal jurisdiction in Arizona because the plaintiff has failed to demonstrate the requisite extra showing. First, the plaintiff argues that Techway contracted with a national distributor to sell its products throughout the United States, including Arizona. But this is insufficient evidence of purposeful availment directed at Arizona because the evidence establishes only that Techway participated in a business arrangement with PTP in South Carolina; there is no evidence that Techway in any way controlled the distribution system of its product within the United States, much less in Arizona. Rather than showing that Techway had any direct contacts with Arizona, the record shows that Techway sold the product at issue exclusively to PTP, an independent company, in South Carolina, that PTP then sold the product to Matco, which in turn retailed the product through its national distribution system through one of its unspecified vendors which apparently sold it to the Round Valley School District, but whether that final sale actually occurred in Arizona is not a matter of record. Furthermore, while the plaintiff relies on Huguet's conclusory statement in his affidavit that PTP "has bought many thousands of Techway products for distribution throughout the United States, including Arizona," presumably to show that Techway had a regular flow of products into Arizona, the plaintiff has not provided any evidence as to how many of these products included the product at issue, nor has it provided any evidence as to how many of the product at issue were actually sold in Arizona.  In short, the plaintiff has not submitted any evidence that Techway

1    directly marketed its product at Arizona or had any other presence in Arizona, and

2    it is simply insufficient that Techway may have foreseen that its product would end

3    up in Arizona.

4          Second, the plaintiff argues that Techway designed and manufactured its

5    product to be marketable in the United States, including Arizona, by designing it to

6    meet UL safety standards required in the United States and to work with the 110-volt

7    electrical supply used in the United States.  This is not a sufficient showing of the

8    required "something more" because it does not indicate that Techway is even

9    focused solely on sales in the United States, much less on sales in Arizona. Even

10   if the product was designed to be used solely with a 110-voltage system, and there

11   is no evidence that it was, as opposed to being designed to use a globally-

12   acceptable 100-240 volt power supply, neither the 110-voltage standard nor the UL

13   standard are unique to the United States.

14         The plaintiff's related argument that Techway has applied for and obtained at

15   least 36 United States patents "to protect its designs under United States law so that

16   an Arizona company or resident cannot copy their design" also does not establish

17   an Arizona focus.  Assuming that the number of Techway's patents is correct, and

18   the plaintiff has not submitted any evidence establishing that, none of the exemplar

19   patents specified by the plaintiff relate to the product at issue.

20         Third, the plaintiff argues that Techway, as a condition of its Supplier

21   Agreement with PTP, purchased "Arizona insurance to protect it from lawsuits within

22   the state[.]" This is insufficient because the only evidence of Techway's insurance

23   coverage is affiant Huguet's statement that Techway, at some unspecified date,

24   provided PTP with a certificate of insurance, for some unspecified duration, that

25   included coverage in the United States.  Even assuming that this insurance

26

- 15 -

coverage also applied to Matco, the national distributor of the product at issue, and there is no evidence of that, and that the insurance was provided by an insurer authorized to do business in Arizona, and there is also no evidence of that, it does not show that Techway specifically purchased insurance to protect itself from claims in Arizona arising from the sale of the product at issue, as opposed to claims arising in the United States generally.   At best, the insurance coverage only shows Techway's awareness that its sale of its products to PTP in South Carolina might subject it to litigation in the United States.

Fourth, the plaintiff argues that "Techway supplied and continues to supply warranty services for its products within the state[,]" and that it has "ongoing warranty responsibility for its products sold in Arizona and receives annual reports from [PTP] on that warranty information."   The only evidence of any such warranty is set forth in two sentences in Huguet's affidavit and that evidence establishes no more than that Techway prints warranty information provided by PTP and Matco on its product instruction manuals and that Techway is annually provided some unspecified warranty-related information by PTP.   There is no evidence that Techway was actually responsible for any warranty-related services in Arizona for the product at issue at the time of the fire allegedly caused by the product.

Based on the record before it, the Court concludes that the plaintiff has failed to establish a prima facie case that Techway purposefully availed itself of the privilege of doing business in Arizona so as to subject it to specific personal jurisdiction in Arizona.   This conclusion is supported by other post-J.McIntyre decisions by district courts within the Ninth Circuit.   *See e.g.*, Echard v. Townsend Farms Inc., 992 F.Supp.2d 958 (D.Ariz.2014) (The plaintiff, who alleged that she was injured in Arizona by consuming a drink product made with tainted pomegranate

seeds, sued defendant Purely Pomegranate, a California company, in Arizona because it sold the contaminated seeds to co-defendant Townsend Farms, an Oregon company, which used them to manufacture a frozen drink which it sold to Costco, a Washington company, which sold it across the western United States. In concluding that the factual record relied on by the plaintiff was insufficient to demonstrate a prima facie case for specific jurisdiction against Purely Pomegranate, the court stated: "Purely Pomegranate did not retail the allegedly tainted product in Arizona. It did not send the product to the company that retailed it in Arizona. Instead, it shipped the ingredients to the company that sold the product to the company that retailed the product in Arizona. Absent factual allegations establishing a prima facie case that Purely Pomegranate did 'something more' to avail itself of the benefits and protections of Arizona's laws - and that [the plaintiff]'s injury arises from the forum-related activities - it is not subject to personal jurisdiction here."); Nevada Power Co. v. Trench France SAS, 2015WL6737015 (D.Nev. Nov. 2, 2015) (A Nevada company brought a product liability action in Nevada stemming from a transformer fire in Nevada against the Austrian manufacturer of the transformer and the French company that manufactured the allegedly defective bushing that the Austrian company had installed in the transformer.  The court rejected the plaintiff's stream of commerce theory of specific personal jurisdiction over the French company because the plaintiff had not submitted the required "something more" showing that the French defendant had engaged in conduct expressly aimed at Nevada, notwithstanding that hundreds of the French company's bushings had entered Nevada. The court noted that, prior to the time of the fire, the French company was not a party to the underlying transformer contract between the plaintiff and the Austrian company, it had never advertised in Nevada, it had no agreement

with the Austrian company to serve as its sales agent or distributor, and it had not designed its bushings for the plaintiff or for any other person or entity in Nevada. The court rejected other Nevada-related contacts relied on by the plaintiff because they had occurred subsequent to the fire.); Haller v. Advanced Industrial Computer Inc., 2015WL854954 (D.Ariz. Feb. 27, 2015) (The court dismissed for lack of personal jurisdiction a wrongful employment termination action brought in Arizona by an Arizona resident against his employer, a California company, and a Taiwanese manufacturer that sold its products in the United States through the California company, which was its distributor.  The Taiwanese company, which shared a common president with its California distributor, had never done any business in Arizona, did not own or lease property in Arizona, did not advertise in Arizona, did not pay taxes in Arizona, and did not have any offices, employees, equipment, operations, bank accounts, post office boxes or telephone listings in Arizona; its only connection with Arizona was that its name appeared on a stock purchase agreement with the plaintiff. The court rejected the plaintiff's stream of commerce-based specific personal jurisdiction argument that the Taiwanese company had purposefully availed itself of the privilege of doing business in Arizona by sending its products into the Arizona market via the California distributor. In so doing, the court stated that while it was plausible that the Taiwanese company knew that its products could enter the Arizona market, there was no evidence that it targeted Arizona by marketing its products to Arizona customers or shipping its products directly to Arizona, rather it merely shipped its products to its California distributor based on the distributor's shipping orders. The court concluded that the Taiwanese company should not be haled into an Arizona court merely because its California distributor, a separate corporate entity, shipped its products to Arizona.); Starbucks Corp. v. Wellshire

Farms, Inc., 2013WL6640124 (W.D.Wash. Dec. 17, 2013) (Starbucks sued a Maryland company in Washington on the basis that it had placed a defective meat product into the stream of commerce with knowledge it would be used in Starbucks' sandwiches.  The evidence showed that Starbucks had a contract with a nonparty food assembler which sourced the ingredients for Starbucks' sandwiches, that the food assembler contracted with a meat vendor, which in turn contracted with the Maryland company. The court found that there was no personal jurisdiction because Starbucks had failed to show that the Maryland company had engaged in the requisite extra conduct necessary for the exercise of specific jurisdiction in that the Maryland company did not attempt to serve the market in Washington, it did not market in Washington, and did not otherwise direct its upstream commerce to Washington.)[7]

     As part of its response, the plaintiff has cursorily requested that it be allowed to conduct discovery concerning Techway's ties to Arizona if the Court finds, as it does, that the evidence submitted by the plaintiff is insufficient to establish a prima

---

[7]

          The Court concludes that the two product liability cases principally relied on by the plaintiff, Patterson v. Home Deport, USA, Inc., 684 F.Supp.2d 1170 (D.Ariz.2010), a pre-J.McIntyre case, and Monje v. Spin Master Inc., 2013 WL2369888 (D.Ariz. May 29, 2013), both of which found the existence of specific personal jurisdiction against a foreign defendant, are not persuasive given their significant factual differences to this action. For example, in Patterson, which involved a suit against the German manufacturer of a defectively designed ladder, the court found that the German company had specifically established a subsidiary in the United States to manufacture and disseminate its ladder.  In Monje, an Australian company, although contracting with a United States company to distribute millions of sets of its defective toy, did not relinquish full control of the distribution process in the United States; rather it remained sufficiently involved with the distribution of the toy in the United States to be considered by the court to have taken affirmative steps expressly aiming the toy into all of the states, including Arizona.

facie case for specific personal jurisdiction.  The Court concludes that no such discovery is warranted here because the plaintiff has not set forth what evidence it believes it could obtain through discovery from Techway, or from any other defendant or entity, that would properly permit the invocation of specific personal jurisdiction against Techway. *See* Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir.2006) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery[.]"); Martinez v. Aero Caribbean, 764 F.3d at 1070 (Court concluded that it is not an abuse of discretion to refuse to grant jurisdictional discovery when it is clear that additional discovery would not demonstrate facts sufficient to constitute a basis for personal jurisdiction.); Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (Court noted that the denial of jurisdictional discovery is not an abuse of discretion when the plaintiffs' request is based only on their belief that discovery will enable them to demonstrate sufficient forum business contacts to establish the court's personal jurisdiction.) Therefore,

IT IS ORDERED that Techway Industrial Company Limited's Motion to Dismiss the Plaintiff's Complaint Under Fed.R.Civ.P. 12(b)(2) and 12(b)(5) (Doc. 123) is granted to the extent that defendant Techway Industrial Company Limited is dismissed from this action pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.

IT IS FURTHER ORDERED that the plaintiff's Motion for Leave for Alternative Service (Doc. 136) and the plaintiff's Motion to Serve Foreign Corporation by Mail (Doc. 137), both of which are directed at Techway Industrial Company Limited, are denied as moot.

IT IS FURTHER ORDERED the plaintiff's Stipulated Motion to Amend Complaint (Doc. 138) is granted to the extent that the plaintiff may file a second amended complaint naming Samsung SDI Co. Ltd. as an additional defendant, but which removes Techway Industrial Company Limited as a named defendant.  The amended complaint shall be filed no later than **March 25, 2016**.

IT IS FURTHER ORDERED that the parties shall file another joint report concerning their mediation efforts no later than **May 6, 2016**.

DATED this 14th day of March, 2016.

Paul G. Rosenblatt
United States District Judge

- 21 -